UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LUIS MONTOYA CARRANZA,<br><br>  Plaintiff,<br><br>  vs.<br><br>CITY OF SAN PABLO, et al.,<br><br>  Defendant. | Case No: 4:20-cv-08443-SBA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND CASE SCHEDULE TO FILE SECOND AMENDED COMPLAINT**<br><br>Dkt. 24 |

Plaintiff Luis Montoya Carranza ("Plaintiff") brings the instant action against Defendants City of San Pablo (the "City") and San Pablo Police Department Officers Matt Wong, Tyler Nelson, Melvin Smith, Gilbert Troche, Joshua Hearn, Monica Louis, and Roberto Arguello (collectively, "the Officers," and together with the City, "Defendants"). Presently before the Court is Plaintiff's Motion for Leave to Amend Case Schedule to File His Second Amended Complaint to Include a Monell Claim. Dkt. 24. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.   BACKGROUND**

  **A.   FACTUAL BACKGROUND**

Plaintiff works at J&M Auto Repair Shop. First Am. Compl. ("FAC") ¶ 20, Dkt. 32. On or about February 28, 2020, he was test driving a customer vehicle when the Officers pulled him over. Id. ¶¶ 20-21. The Officers aimed their firearms at Plaintiff, ordering him to exit the vehicle, put his hands in the air, and get on his knees. Id. ¶¶ 21-22. For his safety, Plaintiff began recording the incident with his cell phone. Id. ¶ 22.

Plaintiff alleges that, although he complied with the Officers' commands, they "approached [him] from behind and placed him in a chokehold." Id. ¶ 23. According to Plaintiff, the Officers "viciously" choked him, causing him to "nearly black[] out and suffer[] extreme pain and fear." Id. After choking and handcuffing Plaintiff, the Officers informed him that "they had the wrong person but that he 'matched the description' of the person they were looking for." Id. Plaintiff later learned that he did not match the description. Id. He alleges that the Officers refused to apologize for their misconduct and instead threatened to cite him for resisting arrest. Id. Officer Hearn, who had "choked out" Plaintiff, also screamed that he should have "broke [Plaintiff's] fucking shoulder." Id.

As a result of the alleged excessive force used by the Officers, Plaintiff suffered "bruising on his neck and body, including the fingerprints of the officers in bruises on his neck, and other physical injuries." Id. ¶ 24. Plaintiff claims he also suffered "emotional distress, pain, suffering, and humiliation." Id.

**B.  PROCEDURAL BACKGROUND**

On November 30, 2020, Plaintiff filed a Complaint for Monetary Relief against Officer Wong, the City, and certain Doe defendants, alleging causes of action for excessive force; unlawful seizure; violation of the Bane Act, Cal. Civ. Code § 52.1; battery; negligence; and false arrest. Dkt. 1. Officer Wong and the City answered the Complaint on December 23, 2020. Dkt. 11.

Thereafter, the Court issued an Order for Pretrial Preparation, which set, *inter alia*, May 14, 2021, as the deadline to amend the pleadings, and October 11, 2021, as the close of fact discovery. Dkt. 14. On March 2, Plaintiff served Defendants with a request for production of documents. Buelna Decl. ¶ 2, Dkt. 24-11. Defendants provided Plaintiff with completed disclosures on May 14. Id. ¶¶ 3-5. Upon review of Defendants' disclosures, Plaintiff was able to identify additional police officers involved in the incident. Id. ¶ 6. On May 17, pursuant to the parties' stipulation, the Court issued an order extending the deadline to amend the pleadings to June 14. Dkt. 20.

On June 14, 2021, Plaintiff filed a motion for leave to file a First Amended Complaint, wherein he sought to add Officers Nelson, Smith, Troche, Hearn, Louis, and Arguello (the "Additional Officers").  Dkt. 21.  On August 27, the Court issued an order granting Plaintiff's motion.  Dkt. 28.  On September 2, Plaintiff filed the operative FAC, realleging the same causes of action but asserting liability against the Additional Officers.  Dkt. 32.  On September 16, 2021, Defendants answered the FAC.  Dkt. 34.

In the meantime, on August 10 and August 13, 2021, Plaintiff took the depositions of Officers Hearn and Arguello.  Buelna Decl. ¶ 7.  On August 24, based on information elicited in those depositions, Plaintiff filed the instant Motion for Leave to Amend Case Schedule to File His Second Amended Complaint to Include a Monell Claim.  Dkt. 24 ("Mot.").  The proposed Second Amended Complaint ("SAC") is attached.  See Dkt. 24-10.  It adds a Seventh Cause of Action against the City for "Supervisory and Municipal Liability for Unconstitutional Custom or Policy" under Monell.  Id. ¶¶ 58-61.

The proposed SAC alleges that the City and the San Pablo Police Department "do not train their officers on the dangers of and how to avoid compression, positional and/or restrain[t] asphyxiation."  Id. ¶ 59; see also id. (alleging that at least one of the Officers testified that the City does not train them on these matters or "the dangers of using body weight on a prone person's upper back and neck").  According to Plaintiff, the Officers choked him and placed their knees and forearms on the back of his neck for extended periods with no concern for his physical state, his ability to breathe, or the injuries they caused.  Id.  He further alleges that none of the Officers were "disciplined or re-trained" and "at least one supervisor actively intervened to cover up the deadly force used during the incident to help shield this approved training and/or lack thereof in which officers are choking and using improper techniques on subjects."  Id.

Plaintiff alleges that "[d]espite having such notice," Defendants "approved, ratified, condoned, encouraged and/or tacitly authorized the failure to train."  Id. ¶ 60.  "As a direct result of the failure to train, Defendants used unconstitutional force and techniques on Plaintiff that proximately caused his injures and the constitutional violation."  Id.  Finally,

Plaintiff alleges that he "sustained serious and permanent injures" as a direct and proximate result of "the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants COUNTY OF SAN JOAQUIN [*sic*] and Does 26-50." Id. ¶ 61.

Defendants have filed an opposition to the motion, Dkt. 33 ("Opp'n"), and Plaintiff has filed a reply in support of the same, Dkt. 35 ("Reply").  The motion is fully briefed and ripe for adjudication.  After briefing the instant motion, the parties stipulated to modify the pretrial schedule, with the exception of the deadline to amend the pleadings.  Dkt. 36.  The Court granted the stipulation and modified all other dates and deadlines accordingly. Dkt. 37.  As is pertinent here, the close of fact discovery was extended to January 28, 2022, and the close of expert discovery was extended to March 11, 2022.  Id.

## II. **LEGAL STANDARD**

A motion for leave to amend the pleadings generally is governed by Federal Rule of Civil Procedure 15(a), which provides that a court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Where, as here, a pretrial scheduling order has been entered that sets a deadline to amend the pleadings and that deadline has passed, however, Rule 16(b) governs.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000) (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992)).

Pursuant to Rule 16(b)(3)(A), a court must enter a pretrial scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions.  Once entered, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  "Good cause" may be shown where pretrial deadlines "'cannot reasonably be met despite the diligence of the party seeking the extension.'" Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).  Although a court may consider prejudice to the opposing party, the "good cause" standard focuses primarily on the diligence of the moving party.  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 737 (9th Cir. 2013) (citing Johnson, 975 F.2d at 609).  If the moving party has not been diligent, the inquiry ends and the motion should be denied. Zivkovic, 302 F.3d at 1087 (citing Johnson, 975 F.2d at 609).

If good cause to modify the scheduling order is shown, the moving party must then demonstrate that leave to amend is warranted under Rule 15(a). Johnson, 975 F.2d at 608. Rule 15(a)(2) provides that a court "should freely give leave when justice so requires," and this policy is to be applied with "extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). Courts consider five factors in determining whether to grant leave to amend: (1) undue delay; (2) bad faith or dilatory motive; (3) prejudice to the opposing party; (4) futility of amendment; and (5) repeated failure to cure deficiencies by amendments previously allowed. Id. at 1052 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Of these factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." Id. "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a *presumption* . . . in favor of granting leave to amend." Id. (emphasis in original).

### III. DISCUSSION

Plaintiff moves to file a Second Amended Complaint to allege a Monell claim against the City. Defendants oppose amendment on the ground that it is futile. They further argue that it would cause prejudice and undue delay.

#### A. GOOD CAUSE TO AMEND THE CASE SCHEDULE

Plaintiff argues that there is good cause to amend the case schedule because the proposed amendment is based on new facts discovered during the depositions of Officers Hearn and Arguello. Mot. at 4, 9. Plaintiff claims he "had no knowledge" of the City's alleged failure to train prior to the depositions. Id. at 9. The record supports this assertion.

Defendants responded to Plaintiff's request for disclosures on May 14, 2021. Only upon reviewing the disclosed documents was Plaintiff able to identify the Additional Officers, including Officers Hearn and Arguello. Plaintiff then promptly moved for leave to file his First Amended Complaint to name the Additional Officers. On August 10 and 13, 2021—well before the initial fact discovery deadline—Plaintiff deposed Officers Hearn and Arguello. Shortly thereafter, on August 24, he filed the instant motion to amend the case schedule to allow him to file an SAC. In his proposed Monell claim, Plaintiff relies on

testimony obtained during the depositions to support the allegation that the City failed to provide training on "compression, positional and/or restrain[t] asphyxiation." SAC ¶ 59.

Defendants do not show that Plaintiff could have obtained the information underlying the proposed Monell claim from other available evidence.[1]  Indeed, Defendants' opposition brief does not respond to the argument that good cause exists to amend the case schedule.  Rather, as discussed below, Defendants argue that leave to amend should be denied based solely on certain Foman factors.  See Opp'n at 3-6.  Accordingly, the Court finds good cause to amend the case schedule under Rule 16(b)(4) and turns to the parties' respective argument as to whether leave to amend is warranted under Rule 15(a).

## B. LEAVE TO AMEND

Defendants argue that leave to amend should be denied primarily because Plaintiff's proposed Monell claim is futile.  Opp'n at 3-6.  They also present a cursory argument that amendment would cause prejudice and undue delay.  Id. at 6.

### 1. Futility

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend."  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995); accord Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015).  "[L]eave to amend should be denied as futile," however, "'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense[.]'"  Barahona v. Union Pac. R.R. Co., 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)).  The "legal sufficiency of a proposed amendment" is determined under the Rule 12(b)(6) standard, Miller, 845 F.2d at 214, that is, whether it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

---

[1] As discussed in Section III.B.2 of this Order, *infra*, Defendants raise such an argument in discussing prejudice and undue delay in the context of the Rule 15 analysis. Defendants' assertion that Plaintiff could have sought to add a Monell claim earlier based on other available evidence is unsupported, however.

550 U.S. 544, 570 (2007)).  "Denial of leave to amend on this ground is rare.  Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed."  Netbula, LLC v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003).

Defendants argue that Plaintiff's proposed Monell claim is futile because "[a] claim of failure to train may not be premised on an isolated incident, such as that alleged in the [SAC] here."  Opp'n at 4.  Defendants further argue that the alleged training failure must be closely related to the "ultimate injury."  Id.  According to Defendants, Plaintiff does not clearly allege an "'ultimate injury' caused by [the City's] alleged failure to train officers on the dangers of possible asphyxiation."  Id.  Finally, Defendants argue that the authorities cited by Plaintiff are factually distinguishable because the plaintiffs in those cases lost consciousness and either suffered a brain injury or died.  Id. at 5-6.  For the reasons discussed below, the Court finds these arguments unpersuasive.

A municipality cannot be liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*.  Monell v. New York City Dep't of Social Services, 436 U.S 658, 691 (1978). "In order to establish liability for governmental entities under Monell, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'"  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted; alterations in original).  "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely."  Id. (citing City of Canton v. Harris, 489 U.S. 378, 390 (1989)).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known and obvious consequence of his action."  Connick v. Thompson, 563 U.S. 51, 61 (2011) (quotation marks, citation, and alterations omitted).

Defendants are correct that, to prevail on a claim of failure to train, it is "'ordinarily necessary'" for a plaintiff to show a "'pattern of similar constitutional violations by

untrained employees.'" Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 794 (9th Cir. 2016) (quoting Connick, 563 U.S. at 62). "Evidence of a pattern of constitutional violations is not always required to succeed" on such a claim, however. Id. In limited circumstances, a "showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." Id. (quoting Connick, 563 U.S. at 63) (quotation marks omitted). "'[T]he unconstitutional consequences of failing to train' must be 'patently obvious' and the violation of a protected right must be a 'highly predictable consequence' of the decision not to train." Id. (quoting Connick, 563 U.S. at 63). "For example, the Supreme Court has opined that a single incident of excessive force, coupled with evidence that a city had neglected to train its armed officers on the constitutional limitations on using force against fleeing felons, might establish that the city manifested deliberate indifference in training law enforcement." Id. (citing Harris, 489 U.S. at 390 n.10).

Here, Plaintiff alleges that the Officers placed him in a chokehold, causing him to nearly black out and suffer extreme pain and fear. He also alleges that the Officers placed their knees and forearms on the back of his neck for extended periods with no concern for his physical state, ability to breath, or the injuries caused.[2] Finally, based on the testimony of certain Officers involved in the incident, Plaintiff alleges that the City does not train officers regarding the dangers of using body weight on a prone person's upper back and neck or to avoid compression, positional, and/or restraint asphyxiation. Assuming the truth of these allegations, the Court concurs with Plaintiff, see Reply at 4-5, that this could fall into the limited set of circumstances in which the consequences of failing to train are so "patently obvious" and the violation of a protected right such a "highly predicable consequence" that the City "could be liable under § 1983 without proof of a pre-existing

---

[2] The Court notes that the SAC could be supplemented to allege additional facts. For example, Plaintiff includes with his reply brief his handwritten account of the incident, wherein he states: "I got pulled to the ground getting choked the[n] flipped over my face to the ground I couldn't breath[e] I was getting my arm pulled up my legs were being twisted and I had several people on my back still while being choked. I couldn't breath[e] at all I nearly blacked out I felt as if I ran out of oxygen and they would continue to say 'stop resisting.'" Dkt. 35-2. The detail included in this account would bolster Plaintiff's claim.

pattern of violations." Connick, 563 U.S. at 64; see also Casey v. City of Santa Rosa, No. 4:18-CV-07731-KAW, 2019 WL 4345963, at *3 (N.D. Cal. Sept. 12, 2019) (denying motion to dismiss Monell claim based on failure to train officers on dangers of chokehold, even in the absence of allegations regarding a pattern of similar violations). Although Plaintiff does not explicitly allege "obviousness" in the proposed SAC, this can be easily cured. Accordingly, the Court will not deny the motion for leave to amend on this basis.

Defendants' remaining arguments are likewise unpersuasive. Defendants argue that, "'for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.'" Opp'n at 4 (quoting Harris, 489 U.S. at 391). Defendants fail to explain why the alleged injuries do not meet that standard, however. Plaintiff must prove that "the deficiency in training actually caused the police officers' [use of excessive force]." Harris, 489 U.S. at 391 (framing the inquiry as whether the injury would have been avoided "had the employee been trained under a program that was not deficient in the identified respect"). Plaintiff alleges that the City failed to train its Officers to avoid compression, positional, and/or restraint asphyxiation. He further alleges that the Officers used excessive force that involved compression, positional, and/or restraint asphyxiation (i.e., they put him in a chokehold and placed their knees and forearms on the back of his neck). Finally, as Defendants acknowledge, see Opp'n at 4, Plaintiff alleges that he "nearly blacked out" and suffered physical injuries as a result of the force used. Nothing more is required. Defendants' argument seems to be animated by the fact that Plaintiff did not lose consciousness or die. See id. at 1 ("[Plaintiff] does not allege that he died, because he did not. He does not allege that he lost consciousness, because he did not."). Such extreme injuries are not required to allege a claim for use of excessive force, however. As Plaintiff aptly asserts, one need not "wait for someone to die to take corrective action." Reply at 5.

**2. Delay and Prejudice**

Defendants also present a cursory argument that the proposed amendment would cause prejudice and undue delay. Defendants assert that they will be "unfairly prejudiced

by unnecessarily expanding the scope of the litigation," asserting that Plaintiff's "unfounded and conclusory Monell claim" will require additional discovery and motion practice. Opp'n at 6. They further argue that amendment will "unduly delay this litigation," asserting, without further explanation or support, that Plaintiff had access to the officers' body worn camera footage and "several relevant policies since before he filed his previous motion [for leave to file the FAC]." Id. These arguments fail to persuade.

As set forth in the Court's prior order granting leave to file the FAC, the burden of having to defend against a claim on its merits does not constitute undue prejudice. See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) ("[L]iberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties.") Likewise, "mere inconvenience or a general opposition to amendment is not grounds to deny a motion to amend." Brees v. Jefferson Cnty., No. C07-5000RBL, 2007 WL 3308432, at *2 (W.D. Wash. Nov. 6, 2007) (citing Genentech, Inc. v. Abbott Laboratories, 127 F.R.D. 529 (N.D. Cal. 1989)). Undue prejudice requires a "substantial negative effect." McCabe v. Hart, No. CV-F-03-5298 REC SMS, 2004 WL 7333020, at *9 (E.D. Cal. Dec. 9, 2004). The Ninth Circuit has found substantial negative effect where, for example, the claims sought to be added "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). Defendants fail to establish such undue prejudice.

The proposed SAC is based largely on the same underlying facts as the prior pleadings, adding only the allegations regarding the City's alleged failure to train. The City is already a party to this action, defending causes of action for violation of the Bane Act, battery, negligence, and false arrest. The addition of a Monell claim for failure to train will not greatly alter the nature of the litigation. Nor will it substantially expand the scope of discovery, which is ongoing. The need to conduct additional discovery does not constitute undue prejudice where, as here, amendment will not radically alter the course of the defense and discovery has not yet closed. See, e.g., Rao v. Apple Inc., No. 5:18-CV-

02813-EJD, 2020 WL 3616317, at *2 (N.D. Cal. July 2, 2020) (and cases cited therein). For the same reason, the proposed amendment will not cause undue delay.

Finally, Defendants' claim of delay in seeking leave to add a Monell claim is unsupported. Although Defendants assert that Plaintiff had access to the officers' body worn camera footage, they fail to explain (and the Court fails to see) how that footage would have provided evidence of a failure to train. Defendants also assert that Plaintiff had access to "several relevant policies," but fail to identify the policies or explain how they bear on the alleged failure to train regarding the dangers of compression, positional, and/or restraint asphyxiation. For his part, Plaintiff asserts that the proposed SAC is based on evidence obtained during the depositions of Officers Hearn and Arguello, and he supports that assertion with the deposition transcripts. Plaintiff promptly filed the instant motion following the depositions. Thus, the Court finds no evidence of undue delay.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Plaintiff's motion for leave to amend the case schedule to file a Second Amended Complaint is GRANTED. Dkt. 24. Plaintiff shall file his Second Amended Complaint within seven (7) days of the date this Order is filed.

IT IS SO ORDERED.

Dated: January 12, 2022

_____ RS
RICHARD SEEBORG FOR SAUNDRA B. ARMSTRONG
UNITED STATES DISTRICT JUDGE